# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

BRIAN E. WALLS,
        Petitioner,

    v.                                       Case No. 04-C-1135
                                              (Criminal Case No. 01-CR-166)

UNITED STATES OF AMERICA,
        Respondent.

## DECISION AND ORDER

Petitioner Brian Walls pleaded guilty to armed bank robbery and abduction to avoid apprehension, and on October 11, 2002, I sentenced him to 210 months imprisonment. Judgment was entered on October 17, 2002. Petitioner took no appeal.

On November 22, 2004, petitioner filed a motion under 28 U.S.C. § 2255, claiming that his lawyer provided ineffective assistance of counsel by failing to consult with him about an appeal or to file a notice of appeal after petitioner expressed an interest in appealing. In its response, the government argued that the motion was untimely, and that, according to petitioner's trial counsel, Patrick Cafferty, petitioner did not request an appeal. In his reply, petitioner stated that he assumed an appeal had been filed and did not learn otherwise until he contacted Cafferty in 2004.

Based on the factual disputes, I appointed counsel for petitioner and held an evidentiary hearing, at which petitioner and Cafferty testified. I then afforded the parties a chance to file briefs. The matter is now fully briefed and ready for decision.

## I. FACTS[1]

### A. Original Proceeding

Petitioner and a man named Demetrius Moore robbed the Guardian National Credit Union at gun point, and abducted an Ameritech employee in order to use his work van as a getaway vehicle. Petitioner and Moore were indicted on charges of armed bank robbery, 18 U.S.C. § 2113(a) & (d), abduction to avoid apprehension, § 2113(e), and use of a firearm during a crime of violence, § 924(c)(1)(A)(ii). On May 13, 2002, petitioner pleaded guilty to all three counts pursuant to a plea agreement with the government, and the matter was eventually scheduled for sentencing on October 11, 2002.

Two issues arose prior to petitioner's sentencing. First, at Moore's sentencing in July 2002, the government conceded that it could not prove that the weapon used to commit the bank robbery was a real firearm.[2] Consistent with that concession, the government moved to dismiss the § 924(c) count (which carried a seven year mandatory consecutive sentence) in petitioner's case. This resulted in a change in petitioner's offense level and guideline calculations. When the defendant is convicted under § 924(c), U.S.S.G. § 2K2.4 cmt. n.4 provides that the court should not impose any weapon enhancements on the underlying offense of conviction, in this case the bank robbery. Thus, once the § 924(c) count was dismissed, such enhancements under § 2B3.1(b)(2), the bank robbery guideline, were proper. Because the parties agreed that the "cap gun" used to commit the robbery qualified

---

[1] I draw these facts from the evidentiary hearing and the record in the underlying criminal case.

[2] Moore claimed that it was a cap gun, and the police never recovered the weapon.

2

as a "dangerous weapon" under §§ 2B3.1(b)(2)(D) and 1B1.1 cmt. n.1(D), I imposed a 4 level enhancement on the bank robbery charge.

Second, the PSR assessed a loss enhancement of 2 under § 2B3.1(b)(7)(C). It arrived at this figure by adding the amount taken from the bank, $8700, to the value of the Ameritech van car-jacked by petitioner and Moore, which it listed as $50,000. However, the government conceded, at both Moore's and petitioner's sentencing, that it could not prove that the value of the van was sufficient to sustain the 2 level enhancement (applicable to losses of more than $50,000). Therefore, I imposed a 1 level enhancement for loss under § 2B3.1(b)(7)(B).

Petitioner's guideline range prior to dismissal of the § 924(c) count and alteration of the loss figure was 235-272 months (151-188 months on the bank robbery and abduction charges plus 84 months consecutive on the § 924(c) charge). After these modifications, his range became 210-262 months. I sentenced petitioner to the low end. No appeal was filed.

**B.    2255 Proceeding**

    **1.    Petitioner's Testimony**

At the evidentiary hearing, petitioner testified that he discussed sentencing issues with Cafferty prior to the sentencing hearing, and that he expected dismissal of the § 924(c) count to result in a greater reduction than it did. He stated that he did not expect a sentence exceeding 17 years.

Petitioner testified that after sentence was imposed he spoke to Cafferty about an appeal while seated at the defense table in the court room. Petitioner was at the time signing a power of attorney form Cafferty had prepared for petitioner and his wife. Petitioner

3

testified that he asked Cafferty if he was waiving his appeal rights by signing the form, to which Cafferty responded, no, and that petitioner had 10 days to appeal. Petitioner testified that he told Cafferty that he did not need 10 days.[3] Petitioner testified that Cafferty then told him that he would be in touch before the 10 day period expired, but that Cafferty did not contact him within that time. Petitioner testified that he tried to call Cafferty's office within the 10 day period but could not get through. He stated that he assumed Cafferty filed a notice of appeal.

Petitioner testified that during his next contact with Cafferty, the date of which he could not recall, they discussed the possibility of a sentence reduction motion under Fed. R. Crim. P. 35 related to petitioner's attempt to cooperate with the government, but they did not discuss the status of any appeal. Petitioner again claimed that he assumed Cafferty had filed the appeal, and that he left it in his attorney's hands.

Petitioner testified that thereafter he spoke to Cafferty's secretary a few times about the status of his case, and she told him nothing had changed. He stated that he did not specifically mention an appeal to the secretary until sometime in the Spring of 2004, at which time she told him that there was no appeal. In August 2004, petitioner wrote Cafferty a letter in which he mentioned the appeal issue and requested advise on his options under the recently released <u>Blakely v. Washington</u> decision. (Govt. Ex. 6.)

In his August 2004 letter, petitioner did not indicate the issues he originally wanted to appeal. Instead, he wrote: "Now, there are issues that I wanted to address in my appeal, that are being brought forward due to the Blakely v. Washington case." (Govt. Ex. 6.) When

---

[3]Petitioner admitted that he did not directly tell Cafferty he wanted to appeal, but that he meant by this comment to convey that he was interested in appealing.

4

asked at the evidentiary hearing to clarify what he wanted to appeal, petitioner testified that some of the enhancements he received were outrageous, but he did not provide any specifics. He also stated that he did not expect 17 ½ years in prison after the § 924(c) count was dismissed. When asked why he waited almost two years to contact his lawyer about an appeal, petitioner testified that he had a hard time reaching Cafferty by phone.

### 2. Cafferty's Testimony

Attorney Cafferty testified he had been practicing criminal defense law for more than 10 years and carried a substantial federal case load. He stated that he met with petitioner numerous times at the Waukesha County Jail to discuss sentencing issues, as well as petitioner's desire to cooperate in order to obtain a sentence reduction. He testified that, after he had resolved the § 924(c) and loss issues with the prosecutor, he wrote petitioner a letter dated September 19, 2002, in which he indicated that petitioner was looking at a sentence of about 17 years. The sentence petitioner actually received was 210 months, or 17 ½ years.

Cafferty testified that he could not specifically recall discussing an appeal with petitioner, but that it was his practice to do so immediately after sentencing. His file (specifically, his CJA voucher) reflected that he had a discussion with petitioner and his wife on October 11, 2002. Cafferty further testified that it was his practice to advise the defendant that he had 10 days to appeal, and that if the defendant requests an appeal, he files it. He stated that if an appeal was requested it was his practice to write a note on the file for his secretary to prepare a notice. His file in petitioner's case contained no notes about an appeal. He testified that he had no reason to believe that he deviated from his regular practice in the instant case. Cafferty also denied any recollection of telling petitioner

5

that they would discuss an appeal again before the 10 days ran. He further testified that in his view there was nothing to appeal: all issues had been resolved in petitioner's favor. He stated that it was his practice to discuss with the defendant whether an appeal had merit.

Cafferty testified that his next contact with petitioner occurred in February 2003, when petitioner called about the possibility of a Rule 35 motion. In response to that contact, Cafferty wrote a letter to the government dated February 14, 2003 inquiring of the status of petitioner's cooperation. (Govt. Ex. 4.) Cafferty did not recall petitioner mentioning an appeal during their conversation in February 2003.

Cafferty testified that he and his staff had further telephonic contact with petitioner and his family in March of 2004, which included a request for documents from petitioner's file. Cafferty sent the documents to petitioner's father on March 25, 2004. (Govt. Ex. 5.) In none of these conversations was an appeal mentioned.

Cafferty testified that his next communication from petitioner was a letter post-marked August 31, 2004, which for the first time mentioned an appeal. (Govt. Ex. 6.) In the letter, petitioner wrote that at the time of sentencing he advised Cafferty that he "didn't need 10 days." (Govt. Ex. 6.) Cafferty recalled no such comment. As noted, the letter also mentioned the recent Blakely decision, and Cafferty testified that he had a subsequent telephone conversation with petitioner about Blakely, and later sent petitioner some materials on the case. (Govt. Ex. 7.)

6

## II. DISCUSSION

A. **Ineffective Assistance Claim**

   1. **Legal Standard**

Ordinarily, a defendant seeking to establish ineffective assistance of counsel must demonstrate both that counsel's performance was deficient and that as a result he suffered prejudice. Strickland v. Washington, 466 U.S. 668, 687 (1984). However, if the defendant shows that his lawyer performed deficiently by failing to file a notice of appeal on request he is entitled to relief under § 2255, without regard to the possibility of success on appeal. Castellanos v. United States, 26 F.3d 717, 719 (7th Cir. 1994); see also Roe v. Flores-Ortega, 528 U.S. 470 (2000). This is so because, in that circumstance, the defendant has been denied not the effective assistance of counsel but all assistance of counsel; thus, prejudice is presumed, and the petitioner need not demonstrate that the appeal had any merit. See Penson v. Ohio, 488 U.S. 75, 88 (1988).

In Roe, the Court set forth the standards for evaluating such claims. First, if counsel consulted with the defendant about an appeal, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal. 528 U.S. at 478.

Second, if counsel did not consult with the defendant, the court must ask whether counsel's failure to consult with the defendant itself constitutes deficient performance. Id. Counsel has a constitutionally-imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal), or (2) that this particular

7

defendant reasonably demonstrated to counsel that he was interested in appealing. Id. at 480. To show prejudice in that circumstance, the defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed. Id. at 484.

**2. Analysis**

I find that Cafferty did consult with petitioner about an appeal, and that petitioner did not advise Cafferty that he wanted to file an appeal. Based on my observation of their demeanor, and all of the surrounding circumstances, I find Cafferty's testimony more credible than petitioner's. Specifically, I find highly credible Cafferty's testimony as to his regular practice in advising clients of their appeal rights, and that he had no reason to believe that he deviated from such practice in the present case. Cafferty is an experienced criminal defense attorney, who regularly represents clients before this court and in the court of appeals. I find that Cafferty discussed with petitioner his appeal rights after the sentencing on October 11, 2002, and that petitioner expressed no desire to appeal. Cafferty's file and the detailed time log that he kept in connection with his CJA appointment reflect such a conversation and contain no mention that petitioner wanted to appeal.[4]

---

[4]Petitioner argues that Cafferty's testimony as to his typical practice is insufficient to overcome his more specific testimony as to what happened. I disagree. Based on my observation of his demeanor, I find petitioner's testimony not credible. Further, as I will discuss, the surrounding circumstances supported Cafferty's testimony and undermined petitioner's. Finally, although petitioner notes that his hearing testimony was largely consistent with the August 2004 letter and his affidavit in support of the § 2255 motion, he points to no corroborating evidence pre-dating Blakely, which, as I will discuss, prompted his expressed desire to appeal.

8

Cafferty's testimony is also bolstered by the circumstances. First, because all issues had been resolved in petitioner's favor at sentencing, there was nothing to appeal.[5] At the § 2255 hearing, petitioner vaguely complained that some of the enhancements he received were improper, but he offered no specifics. Nor does he explain what he wanted to appeal in the post-hearing submission from counsel.[6] Cafferty sent petitioner a letter dated September 19, 2002, in which he advised petitioner that the sentencing issues had been resolved in his favor and estimating a 17 year sentence; that is about what petitioner received. Petitioner denied receiving the letter and stated that the 17-year figure was what he expected prior to the § 924(c) count being dismissed, but his testimony was not credible. I see no reason why petitioner would not have received the letter, and petitioner's testimony makes no sense when one compares the guideline calculations in the PSR to those eventually adopted at sentencing. With the § 924(c) count, petitioner was looking at 224 or 235 months in prison at the low end of the range (depending on the loss calculation).[7]

---

[5] While it is true that petitioner need not prove that his appeal had merit to prevail in this § 2255 motion, the absence of any appealable issues is relevant in evaluating the credibility of the testimony. It is also relevant to determining whether Cafferty had a duty to engage in further consultation with petitioner about an appeal. Roe, 528 U.S. at 480. The fact that an appeal might have merit now, under Booker, is of no help to petitioner. He points to no errors under then-applicable law.

[6] Petitioner states in his brief that his sentence of 17 ½ years was excessive. However, it was the low end of the then-mandatory guideline range. Further, given the egregious and violent nature of the offense, and defendant's significant prior record (criminal history category VI), it was not excessive.

[7] In his brief, petitioner states that there is no evidence that Cafferty explained the guideline issues such that petitioner's belief in a greater reduction after dismissal of the § 924(c) count would be misplaced. However, the evidence shows that Cafferty met with petitioner about sentencing issues several times and sent a letter predicting a 17 year sentence after the disputed issues were resolved. Petitioner's vague claim that he expected a greater drop is incredible.

9

Second, despite the fact that petitioner and/or his family spoke to Cafferty at least twice between October 2002 and March 2004, no mention was made of the appeal. Rather, the first contact, in February 2003, concerned a possible Rule 35 motion, and the second, in March 2004, concerned obtaining documents. Petitioner was able to contact Cafferty when he wanted to, and he was not willing to simply leave the Rule 35 issue in Cafferty's hands; rather, he called to prompt his lawyer on that issue. This evidence contradicts petitioner's claim that he simply assumed that Cafferty had filed the appeal, that he had a hard time reaching Cafferty about the appeal, and that he was willing to leave the appeal in Cafferty's hands.[8]

Third, the first mention of an appeal in petitioner's communications with Cafferty did not come until mid-2004, nearly two years after sentencing.[9] In his August 2004 letter to Cafferty, petitioner was most concerned about the possible effect of Blakely v. Washington on his sentence. I find that the issuance of Blakely in June 2004, which cast serious doubt on the viability of the federal sentencing guidelines, motivated petitioner to contact Cafferty in an effort to obtain sentencing relief. Indeed, petitioner wrote that the issues he wanted to address in an appeal were "being brought forward due to the Blakely v. Washington case." (Govt. Ex. 6.) I find incredible petitioner's statements in the letter, which he repeated

---

[8]In his brief, petitioner states that perhaps he did not consider Cafferty his appellate counsel. There is no credible evidence suggesting that such a belief would have been reasonable – petitioner still considered Cafferty his lawyer for purposes of Rule 35 – or that petitioner legitimately harbored such a belief.

[9]Petitioner testified to several contacts with Cafferty's secretary, which he could not pinpoint but estimated to be in March, April or May 2004. Given the contents of the August 2004 letter and all of the circumstances, I find it most likely that petitioner did not contact Cafferty's office specifically about an appeal until after Blakely was issued in June 2004.

10

at the § 2255 hearing, that he told Cafferty he "didn't need 10 days [to decide on an appeal]." (Govt. Ex. 6.) Rather, the purpose of the letter, which for the first time mentioned an appeal, was to take advantage of Blakely.[10]

Finally, I note that even if I were to accept petitioner's version of what happened after sentencing (which I do not), he could not prevail. Petitioner did not testify that he directly told Cafferty he wanted to appeal. All he said was that he "did not need 10 ten days." Castellanos and Roe require a defense attorney to file an appeal only if the defendant expressly instructs counsel to appeal. Roe, 528 U.S. at 478; Castellanos, 26 F.3d at 719 ("'Request' is an important ingredient in this formula. A lawyer need not appeal unless the client wants to pursue that avenue."). No such request was made in this case, even under petitioner's version of events. Nor can I conclude that's counsel failure to discuss an appeal further resulted in prejudice: petitioner has not shown that but for counsel's failure to consult he would have appealed. Rather, the evidence clearly shows that there were no issues to appeal after sentencing and that petitioner wanted to appeal only after Blakely came down.

For all of these reasons, I find that Cafferty did not render ineffective assistance of counsel.

**B.	Timeliness**

I also find that petitioner's motion was untimely. A one year statute of limitations applies to motions under § 2255. The limitation period runs from the latest of--

---

[10] In his brief, petitioner notes that the letter came before Booker, the case which presumably would be the cause of baseless § 2255 motions seeking to take advantage of the Court's Sixth Amendment holding and the now advisory nature of the guidelines. However, as petitioner himself seemed to recognize in his August 2004 letter, Blakely signaled the eventual downfall of the mandatory guidelines.

11

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255 ¶ 6.

Under § 2255 ¶ 6(1), petitioner's conviction became final no later than 10 days after entry of judgment on October 17, 2002, when the time for filing a direct appeal expired. See Sanchez-Castellano v. United States, 358 F.3d 424, 426-27 (6th Cir. 2004); United States v. Smith, 65 Fed. Appx. 201, 202 (10th Cir. 2003); United States v. Pyeatt, 59 Fed. Appx. 275, 276 (10th Cir. 2003); United States v. Cottage, 307 F.3d 494, 499 (6th Cir. 2002); United States v. Schwartz, 274 F.3d 1220, 1223 (9th Cir. 2001); Perez v. United States, No. 01 C 8927, 2004 U.S. Dist. LEXIS 16282, at *6-7 (N.D. Ill. Aug. 12, 2004). The instant motion was more than filed two years after judgment became final.

Petitioner claims that he did not discover Cafferty's failure to file an appeal until mid-2004 and thus attempts to avail himself of the tolling mechanism of § 2255 ¶ 6(4). The time period commences under § 2255 ¶ 6(4) when the factual predicate for the claim could have been discovered through due diligence, not when it was actually discovered by the prisoner. See Owens v. Boyd, 235 F.3d 356, 359 (7th Cir. 2000). Therefore, petitioner's bald claim that he did not learn that no appeal was filed until 2004 does not automatically extend the statute of limitations. Rather, "the proper task in a case such as this one is to determine

12

when a duly diligent person in petitioner's circumstances would have discovered that no appeal had been filed." Wims v. United States, 225 F.3d 186, 190 (2d Cir. 2000).

If the defendant directs his lawyer to appeal, he may reasonably rely on his lawyer to file the notice, and due diligence under such circumstances does not require him to check on the status of his appeal on the very day the sentence became final. Id. at 190-91. Nevertheless, it was plainly unreasonable for petitioner to wait nearly two years to determine the status of his appeal. See Rodriguez v. New York, No. 01-Civ.-9374, 2003 U.S. Dist. LEXIS 1983, at *67 (S.D.N.Y. Feb. 11, 2003) (finding habeas petition untimely because "it was simply not 'reasonably diligent' for Rodriguez to wait over 18 months before inquiring into the status of his appeal"); Plowden v. Romine, 78 F. Supp. 2d 115, 119 (E.D.N.Y. 1999) (finding that it was not reasonable for defendant to allow more than 17 months to elapse before inquiring as to the status of his appeal). "That an appeal had not been filed was a matter of public record, 'which reasonable diligence could have unearthed.'" Montenegro v. United States, 248 F.3d 585, 593 (7th Cir. 2001) (quoting Owens, 235 F.3d at 360), overruled on other grounds by Ashley v. United States, 266 F.3d 671 (7th Cir. 2001). Thus, even if petitioner had a hard time reaching Cafferty, a quick check of the docket would have revealed that no notice was filed.

Further, petitioner points to no circumstances relating to his confinement that inhibited his ability to discover the status of his appeal. In fact, he was able to speak to Cafferty about other matters, and the issue of an appeal never came. Specifically, in February 2003 petitioner discussed with Cafferty the status of a possible Rule 35 motion; it would have been simple to also inquire of the status of his appeal or if another lawyer was handling the appeal. Nor does petitioner present any evidence of disability or lack of sophistication that

13

would have inhibited him from finding out, prior to November 2003, that the notice had not been filed. See id. at 592-93.

Under these circumstances, it is plain that petitioner did not exercise due diligence. Thus, even if petitioner had directed Cafferty to appeal in October 2002 (and for the reasons set forth above I find that he did not), his § 2255 motion is untimely.

### III. CONCLUSION

**THEREFORE, IT IS ORDERED** that petitioner's § 2255 motion is **DENIED**, and this case is **DISMISSED**. In the alternative, the motion is **DISMISSED** as untimely. The Clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 6th day of December, 2005.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge